Thomas R. Roth, Appellant *v.* Borough of Verona et al., Appellees.

Argued February 28, 1983, before Judges ROGERS, CRAIG and MACPHAIL, sitting as a panel of three.

*Bruce D. Campbell, Meyer, Darragh, Buckler, Bebenek & Eck,* for appellant.

*Nicholas R. Stone,* for appellees.

OPINION BY JUDGE MACPHAIL, May 17, 1983:

Thomas R. .Roth (Appellant) has appealed from an order of the Court of Common Pleas of Allegheny County which dismissed both his action in mandamus and his appeal under the Local Agency Law[1] from the action of the Borough Council (Council) of the Borough of Verona (Borough) terminating his employment as a police officer.

A stipulation of facts filed by the parties with the court of common pleas reflects that Appellant was appointed as a probationary police officer on or about September 12, 1978. The probationary period was to last for one year in accordance with applicable law,[2] during which time Appellant completed his basic training and then served as a regularly scheduled police officer. On September 11, 1979, Appellant was asked to attend a private Council meeting. At that meeting Appellant was informed that the Mayor and Borough Police Chief were recommending that Coun-

---

[1] 2 Pa. C. S. §§551-555, 751-754.

[2] Section 1186 of The Borough Code, Act of February 1, 1966, P.L. (1965) 1656, *as amended,* 53 P.S. §46186 and Section 805 of the Rules and Regulations of the Civil Service Commission of the Borough of Verona.

cil not vote to appoint Appellant to a permanent position with the police force and that Council intended to follow that recommendation.[3] After further discussion, Appellant was given the option to accept a six month extension of his probationary period rather than be fired. Appellant agreed to the extension and subsequently signed a written document to that effect which was also signed by the Mayor, Borough Secretary and a witness.[4] Although no Council vote was ever taken formally approving the agreement, the Council members voiced no objections to the ex-

---

[3] The recommendation was made pursuant to Section 805 of the Rules and Regulations of the Civil Service Commission which provides, in pertinent part, as follows:

The Chief of Police and Mayor shall investigate the adjustment, performance and general acceptability of each probationer under his supervision to determine whether such probationer is fully qualified for permanent appointment. The Chief of Police and Mayor shall make a report on the performance and conduct of each probationer not less than ten (10) calendar days not [sic] more than fifteen (15) calendar days before the next regular meeting of the Borough Council immediately preceding the end of the probationary period. Each final probationary report shall include the recommendation of the Chief of Police or Mayor either to retain or to reject the probationer.

[4] The agreement provides, in pertinent part, as follows:

Whereas the mayor and the Chief of Police even though filing a negative report agree that the probationary period was not sufficient for evaluation; and

Whereas the Boro Council wishes to extend the probationary period giving the said Thomas Roth additional time to qualify for a full position as a police officer of Verona Boro.

Now Therefore, Thomas Roth and the Verona Boro Council agree as follows:

1. Notwithstanding the usual rule applicable to this situation the Verona Council agrees to extend the probationary period for another six months to give the said Thomas Roth additional time to qualify.

tension at the meeting. We are in accord with the court of common pleas that the extension agreement represented the will of the Council.[5]

At the end of the additional six month probationary period, the Mayor and the Chief of Police again recommended, by letter dated March 6, 1980, that Appellant not be granted permanent status. On March 11, 1980, Appellant received a letter of termination signed only by the Council President. Appellant subsequently instituted a mandamus action seeking reinstatement as a permanent police officer. The court of common pleas entered a preliminary order reinstating Appellant pending the outcome of a formal Council vote regarding his retention. Pursuant to that order, the Council voted on April 8, 1980 to terminate Appellant's employment. Appellant appealed from that order under the Local Agency Law. The court of common pleas consolidated the man-

---

2. Thomas Roth agrees that this is being done solely for his benefit and if found not to qualify after the six month period, he will voluntarily leave his position without the necessity of being dismissed.

[5] We must reject Appellant's contention that the extension agreement is invalid because Council failed to act on it during a public meeting pursuant to Section 2 of the Act of July 19, 1974 (Sunshine Law), P.L. 486, *as amended*, 65 P.S. §262. We believe that the meeting with Appellant on September 11, 1979 constituted an executive session under Section 3(1) of the Sunshine Law, 65 P.S. §263(1) which permits such private sessions for the purpose of "[c]onsidering dismissal or disciplining of, or hearing complaints or charges brought against a public elected officer, employee, or other public agent unless such person requests a public hearing." As our Supreme Court has recognized, the Sunshine Law "reveals a clear distinction between the openness required of agencies with respect to their policymaking decisions, and the confidentiality permitted them with respect to executive decisions about the character and competence of individuals". *Consumers Education and Protective Association v. Nolan*, 470 Pa. 372, 389, 368 A.2d 675, 684 (1977) (footnote omitted).

damus action and the local agency appeal for disposition.

Appellant argued before the common pleas court, as he does here, that the extension agreement which he executed in September, 1979 was ineffective and that he became a permanent police officer when Council failed at the end of his one year probationary period to notify him in writing that he would not receive a permanent appointment. Appellant, accordingly, argues that he is entitled to the civil service protections afforded permanent Borough police officers.

The applicable statutory provision with regard to probationary appointees is Section 1186 of The Borough Code (Code), 53 P.S. §46186, which reads, in relevant part, as follows:

> All original appointments to any position in the police force . . . shall be for a probationary period of not less than six months, and not more than one year. . . . If at the close of a probationary period the conduct of[6] fitness of the probationer has not been satisfactory to the council, the probationer shall be notified in writing that he will not receive a permanent appointment. Thereupon, his appointment shall cease; *otherwise his retention shall be equivalent to a permanent appointment.* (Emphasis added.)

Appellant contends that this provision must be strictly construed and that the Borough's retention of Appellant beyond the original one year probationary

---

6 We suspect from comparing other similar legislation that the phrase "conduct *of* fitness" should read "conduct *or* fitness"; however, we have quoted the statute as it appears in the Pamphlet Laws. *Cf.* Section 640 of The First Class Township Code, Act of June 24, 1931, P.L. 1206, *as amended*, 53 P.S. §55640.

period, absent a written notification that he was not to receive a permanent appointment, automatically converted his appointment to a permanent one notwithstanding the extension agreement. We cannot accept this argument and agree with the court of common pleas that the case of *Smith, Jr. v. Keim,* 8 Pa. Commonwealth Ct. 610, 303 A.2d 869 (1973) is controlling on this issue.

In *Smith* the police officer involved brought a mandamus action claiming entitlement to a civil service commission hearing to challenge his dismissal. The facts presented were very similar to those in the instant case except that the officer in *Smith* was first notified in writing that his appointment would not be made permanent and was *subsequently* granted an extension of his probationary period. In the instant case, of course, Appellant was only notified orally (at the September 11, 1979 meeting) that his appointment was not to be made permanent. Appellant contends that the lack of written notice distinguishes this case from *Smith* and requires that we reverse the court of common pleas. We disagree.

Although the Council in this case did not notify Appellant in writing that it did not intend to make his police appointment permanent, the facts as stipulated demonstrate that Council was in agreement that the permanent appointment should be denied. It was only when Appellant agreed to an extension of his probationary period that the Council apparently decided not to formalize its immediate rejection of his permanent appointment. While we noted in *Smith* that civil service laws cannot, in general, be altered by agreement, we also noted what is equally applicable here:

[Appellant] voluntarily waived any right he might have in consideration of a second chance.

He bargained for and obtained an unusual opportunity. In failing to succeed, he would now charge the Commissioners with the duty to restore him to a position for which he is not qualified based on self-assumed rights which he willingly gambled away.

*Id.* at 613, 303 A.2d at 871. We, accordingly, conclude that Appellant has not demonstrated a clear right to a permanent police officer appointment by reason of the Council's actions in September, 1979, and that he is not entitled to the mandamus relief requested.

We do think, however, that Appellant is entitled to a hearing under the Local Agency Law to determine whether he was correctly found to be unqualified for the permanent appointment in April, 1980.[7] In order to be entitled to the procedural protections of the Local Agency Law, Appellant must establish some "property right" in his employment. *Ditzler Appeal*, 63 Pa. Commonwealth Ct. 233, 437 A.2d 1071 (1981). In the area of public employment such a right exists only if the employee, by statute or contract, has been afforded some form of guarantee. *Fair v. Delaney*, 35 Pa. Commonwealth Ct. 103, 385 A.2d 601 (1978).

---

[7] Although the trial court's order clearly dismissed the Local Agency Law appeal, there is no discussion of that issue in the trial court's opinion. Appellant's statement of issues to be argued to this Court does not address the denial of his appeal under the Local Agency Law. Rule 2116 of the Rules of Appellate Procedure states that ordinarily no point will be considered by the reviewing court which is not set forth in the statement of questions involved or suggested thereby. At oral argument in the case *sub judice*, Appellant did urge that he was entitled to a hearing under the Local Agency Law. Opposing argument was also offered and no objection was made by the Council to the propriety of our hearing such argument. While we are reluctant to depart from the strict application of the Rule, we will consider the merits of Appellant's statutory appeal.

Although we have determined that Appellant continued as a probationary employee until his dismissal, we observe that the Code does not grant discretion to the Council to deny permanent status to probationary appointees. Under Section 1186 of the Code a permanent appointment may be denied only where "the conduct of fitness of the probationer has not been satisfactory to the council." We think that this statutory limitation on the Council's power to refuse a permanent appointment is sufficient to confer on Appellant a property right in his employment.

Having reached this conclusion it follows that the Council's vote to reject Appellant as a permanent police officer constituted an "adjudication" as that term is defined at 2 Pa. C. S. §101.[8] Since Appellant has not been afforded reasonable notice of a hearing and an opportunity to be heard, however, the Council's adjudication is not a valid one. Section 553 of the Local Agency Law, 2 Pa. C. S. §553; *see also Hardee's Food Systems v. Department of Transportation,* 495 Pa. 514, 434 A.2d 1209 (1981). We, accordingly, must remand in order that the procedural protections of the Local Agency Law may be afforded to Appellant. We note in this regard that Section 754(a) of the Local Agency Law, 2 Pa. C. S. §754(b) permits the court of common pleas to either hear the matter *de novo* or to remand the proceedings to the Council. *See Ambron v. Philadelphia Civil Service Commission,* 54 Pa. Commonwealth Ct. 488, 422 A.2d 225 (1980).

---

[8] The definition of "adjudication" at 2 Pa. C. S. §101 is as follows:

Any final order, decree, decision, determination or ruling by an agency affecting personal or property rights, privileges, immunities, duties, liabilities or obligations of any or all of the parties to the proceeding in which the adjudication is made.

360

ORDER

The order of the Court of Common Pleas of Allegheny County, dated September 25, 1981, is affirmed insofar as it dismissed the mandamus action instituted by Thomas R. Roth at Case No. GD 80-6707 and is reversed insofar as it dismissed the local agency appeal docketed at SA No. 368 of 1980. It is further ordered that the matter be remanded for further proceedings consistent with the foregoing opinion.

Jurisdiction relinquished.